652 So.2d 545 (1995)
STATE of Louisiana,
v.
Donald Earl LUTCHER.
No. 94 KA 0291.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Stephen P. Callahan, Asst. Dist. Atty., Houma, for State of Louisiana.
William H. Dunckelman, Houma, for Donald Earl Lutcher.
Before LOTTINGER, C.J., SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
The defendant, Donald Earl Lutcher, was charged by grand jury indictment with second degree murder. La.R.S. 14:30.1. He pleaded not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served. He has appealed, alleging that the trial court erred in:

*546 1. denying the defendant's motion to suppress confessions and/or inculpatory statements;
2. denying the defendant's motion to suppress physical evidence;
3. denying the defendant's motion to suppress prejudicial evidence;
4. denying the defendant's motion to suppress evidence of other acts or crimes;
5. failing to grant the defendant's challenges for cause;
6. interposing questions to prospective jurors during the defendant's voir dire examination in a tone and manner which could and did prevent said prospective jurors from later responding honestly and truthfully to defense counsel's questions;
7. granting a recess during the trial which in fact was a continuance;
8. transferring the defendant's trial from one division of court and judge to another division of court and judge without the defendant's consent;
9. transferring the defendant's trial to a division of court chosen by the district attorney;
10. failing to reallot the case in accordance with law;
11. denying the defendant's right to a speedy trial;
12. failing to grant a mistrial on its own motion;
13. not ordering the trial to proceed and allowing, if necessary, the substitution of another prosecuting attorney;
14. allowing hearsay testimony by Ms. Betty Ruffin;
15. allowing hearsay testimony by Ms. Loretta Williams;
16. allowing the introduction into evidence of S-2 and S-3;
17. allowing testimony of another crime committed by the defendant to be introduced into evidence;
18. allowing hearsay testimony by Randy Trosclair;
19. accepting Dr. Feaster Fitzpatrick as an expert in the field of pathology; and
20. allowing a restraining order issued in December of 1991, and testimony thereon, to be introduced into evidence.
Because we conclude that assignment of error number five has merit, the defendant's conviction and sentence must be reversed. Accordingly, we pretermit consideration of the remaining assignments of error.
At approximately 11:00 p.m. on April 19, 1992, the defendant killed his estranged wife, Sandra Trosclair Lutcher, outside her trailer on North Bayou Black Drive in Gibson, Louisiana. The defendant stabbed the victim over twenty times with a knife. The victim's brother, John Trosclair, III, witnessed the stabbing before leaving to summon help. The victim was pronounced dead at the scene. Shortly thereafter, the defendant was apprehended, and he confessed to the murder.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, the defendant contends that the trial court erred in denying his challenges for cause of prospective jurors Jacqueline Brunet, Stephanie Livas, and Johnelle Johnson. Without further discussion, we find no error in the trial court's rulings denying the defendant's challenges for cause of prospective jurors Brunet and Johnson. However, because we find that the trial court erred in denying the defendant's challenge for cause of prospective juror Stephanie Livas, we must reverse the defendant's conviction and sentence and remand this matter for a new trial.
Initially, we note that the record shows that defendant exhausted his peremptory challenges.[1] However, even if the defendant *547 had not exhausted his peremptory challenges, he would not have been precluded from complaining of the trial court rulings refusing to sustain his challenges for cause. See State v. Burge, 498 So.2d 196, 203 (La. App. 1st Cir.1986) (wherein we noted that Act 181, § 1, of 1983 amended La.Code Crim.P. art. 800 to remove the requirement that a defendant exhaust all his peremptory challenges before he can complain of a ruling denying a challenge for cause).
La.Code Crim.P. art. 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
In brief, the defendant quotes a portion of the voir dire examination and the responses given by Ms. Livas. The defendant asserts that, based on the answers given by Ms. Livas, it was obvious that she should have been excluded because of her partiality. He argues that the court's refusal to grant his challenge for cause of this prospective juror constituted reversible error.
We now focus our attention on the voir dire responses given by Ms. Livas. During defense counsel's examination of Ms. Livas, the following colloquy occurred:
MS. SMITKO:
Ms. Johnson does anyone else know the family of the victim in any way, that they're aware of?
JURORS INDICATES (SIC) YES
MS. SMITKO QUESTIONS MS. LIVAS:
Q Yes, ma'am.
A Stephanie Livas. I went to school with the sister and the brother.
Q Of Ms. Lutcher?
A Uh-huh.
Q Okay. Did you go to school with John Trosclair?
A Junior? Yes.
Q All right. Certainly not Senior. Ms. Livas, is that going to make it difficult for you to sit on this jury and decide Mr. Lutcher's fate fairly and impartially?
A No, but I don't think I would be, I think I would be more objective, I mean I don't think I would, I would want to sit on the jury.
Q You mean you think you'd have a hard time being objective?
A Uh-huh.
Q So you might not be
A I'd be more on the prejudice side because I know them.
Q Right. And prejudice (sic) against Mr. Lutcher.
A Uh-huh.
Q And if his family [victim's family] testifies, family you know that you went to school with, would you be more likely to believe them because you know them, you went to with (sic) him school and you been (sic) knowing them for years?
A Yeah.
Q Okay. Thank you, Miss Livas. I appreciate your honesty.
Ms. Livas candidly admitted that her relationship with the victim's family would affect her objectivity and cause her to be prejudiced against the defendant. Neither the trial court nor the prosecutor attempted to rehabilitate Ms. Livas. Considering the entirety of Ms. Livas' voir dire responses, the trial court's decision to deny this challenge for cause was clearly an abuse of discretion.
The defendant exercised a peremptory challenge against Ms. Livas; therefore, she did not serve on the jury. In our view, these circumstances present a situation wherein the harmless error rule should be applied. However, because of the existing jurisprudence, we are precluded from applying *548 the harmless error rule in this situation, and we must reverse.
Prior to the enactment of the Louisiana Code of Criminal Procedure, the jurisprudence required three factors before a trial court's refusal to sustain a defendant's challenge for cause constituted reversible error: (1) an erroneous ruling refusing to sustain the defendant's challenge for cause; (2) exhaustion of all of the defendant's peremptory challenges; and (3) the defendant was forced to accept an obnoxious juror. See State v. Monroe, 366 So.2d 1345, 1347 (La.1978); State v. Breedlove, 199 La. 965, 7 So.2d 221 (1941) (affirmed on rehearing 1942). However, with the enactment of the Louisiana Code of Criminal Procedure in 1966, the legislature partially overruled the Breedlove decision with Article 800. Article 800 no longer required the showing that the defendant was forced to accept an obnoxious juror. Instead, until 1983, Article 800 required only two factors to constitute reversible error: (1) the trial court erred in refusing to sustain a challenge for cause by the defendant; and (2) the defendant exhausted all of his peremptory challenges.
In 1983, Article 800 was amended to remove the requirement that a defendant exhaust all of his peremptory challenges before complaining of a ruling denying a challenge for cause. See Act 181, § 1, of 1983; State v. Vanderpool, 493 So.2d 574 (La.1986). Nevertheless, the Louisiana Supreme Court held in Vanderpool that if the defendant has not exhausted his peremptory challenges, in order to obtain reversal of a conviction for the erroneous denial of a challenge for cause, the defendant must show prejudice. If he cannot do so, the harmless error rule will be applied. Id. at 575. On the other hand, the supreme court held in State v. Ross, 623 So.2d 643, 644 (La.1993), that if a defendant exhausted his peremptory challenges and establishes an erroneous denial of a defense challenge for cause, then prejudice is presumed, and there is reversible trial court error.
The flaw in the jurisprudence perceived by this Court is as follows. Simply because prejudice is presumed does not necessarily mean that this presumption cannot be rebutted. If the presumption of prejudice can be rebutted by the State, then there is no actual prejudice to the defendant and, therefore, any error in denying such a defense challenge for cause is harmless beyond a reasonable doubt. In other words, this Court is of the opinion that the harmless error rule may be applicable even in situations wherein the trial court has erroneously denied a defendant's challenge for cause and the defendant has exhausted all of his peremptory challenges.
This Court found such a situation in State v. Ross, 604 So.2d 1036, 1042 (La.App. 1st Cir.1992). In Ross, this Court found an erroneous denial of a challenge for cause and noted that the defendant had exhausted his peremptory challenges. However, we held that there was no prejudice to the defendant because the defendant had not been forced to accept an objectionable juror. Yet, as noted above, the Louisiana Supreme Court reversed in State v. Ross, 623 So.2d 643 (La. 1993). In doing so, the supreme court did not mention application of the harmless error rule. Since its decision in Ross, the supreme court has maintained its position that the erroneous denial of a defense challenge for cause combined with the exhaustion of the defendant's peremptory challenges raises a presumption of prejudice and mandates reversal. See State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1281.
We note that the instant case presents an even more forceful argument in favor of the harmless error analysis than the situation in Ross. In the instant case, only one juror (Rhonda Brock) was seated after the defendant exhausted his last peremptory challenge. A review of the voir dire examination of Ms. Brock indicates that she clearly was not an objectionable juror. Our decision that Ms. Brock was not an objectionable juror is supported by the following observation. During subsequent proceedings, defense counsel specifically stated that the reason the defense did not request a mistrial (on unrelated grounds) was because defense counsel and the defendant were satisfied with the *549 composition of the jury.[2] The fact that the defense was satisfied with the jury selected herein indicates that, despite the trial court's erroneous ruling denying their challenge for cause of Ms. Livas or the subsequent exhaustion of his peremptory challenges, the defendant clearly suffered no prejudice in this situation.
Although we may disagree with a ruling of the Louisiana Supreme Court, we are not free to disregard it. Therefore, unless and until the Louisiana Supreme Court recognizes the applicability of the harmless error rule in situations wherein the defendant suffered no prejudice despite the erroneous denial of his challenge for cause and the exhaustion of his peremptory challenges, we must follow existing jurisprudence and reverse the conviction and sentence. Accordingly, the defendant's conviction and sentence are hereby reversed, and this matter is remanded to the trial court for a new trial.
CONVICTION AND SENTENCE REVERSED AND REMAND FOR NEW TRIAL.
SHORTESS, J., concurs in the result.
NOTES
[1] Although the minutes indicate that the defendant used only ten peremptory challenges, the peremptory challenge sheets contained in the record indicate that the defendant actually used all twelve peremptory challenges. The court utilized a system of simultaneous peremptory challenges. Two prospective jurors, Dyanthlyn Butler and Frances Liner, were peremptorily challenged by both the State and the defendant. However, the minutes reflect that these two peremptory challenges were exercised by the State alone and, therefore, the minutes reflect only ten defense peremptory challenges instead of the correct number of twelve.
[2] The instant case was scheduled to be tried before Judge Baron B. Bourg. In fact, Judge Bourg presided over jury selection on September 14, 1993. However, that night the prosecutor's father suffered a heart attack. On the morning of September 15, the prosecutor made a request for a recess, which Judge Bourg granted over the defendant's objections. The trial was resumed on September 20. Because Judge Timothy C. Ellender was the judge presiding over felony jury trials that week, the trial resumed with Judge Ellender presiding. Although the defendant had the opportunity to request a mistrial before both Judge Bourg and Judge Ellender, he did not do so. In fact, when explaining to Judge Ellender why the defense did not request a mistrial when the trial resumed on September 20, defense counsel stated the following:

THE COURT: Ms. Smitko, if it's so prejudicial to your client, why didn't [you] move for a mistrial?
MS. SMITKO: We didn't move for a mistrial last week, Your Honor, because there were no valid grounds existing under the Code of Criminal Procedure to grant a mistrial.
THE COURT: Well why don't you move for one now?
MS. SMITKO: At the time, Your Honor, when we chose the jury panel, the defendant and myself were satisfied with the constitution of the panel. I'm unable to tell at this point whether the panel has been tainted or not. If they have not, then we are satisfied with the panel that was chosen.